UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D
MAY 2 4 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-389-GWU

PHILLIP DAVENPORT, PLAINTIFF,

VS.  **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

Davenport

Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

2

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

Davenport

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

Davenport

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Phillip Davenport, a 23-year-old individual with a high school education and unskilled work experience, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of partial complex seizures, discogenic and degenerative disorders of the back, a history of a right humeral fracture and shoulder dislocation, an adjustment disorder, a pain disorder, and polysubstance abuse/dependence in partial remission. (Tr. 20). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 23-8). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether the claimant could perform any jobs if he were capable of "medium" level exertion, and also had the following non-exertional impairments. (Tr. 440). He: (1) could not climb ladders,

ropes, or scaffolds, or crawl; (2) would be precluded from any overhead reaching with his right upper extremity; (3) could not work around extreme cold, vibrations, unprotected heights, or dangerous, moving machinery; (4) could not do work requiring the operation of motor vehicles; and (5) would require work involving no more than simple, non-detailed tasks, where co-worker and public contact would be casual and infrequent, where supervision would be direct and non-confrontational, and changes in the workplace would be infrequent and gradually introduced. (Id.). The VE responded that there were jobs that such a person could perform at the light and sedentary levels, such as production inspector, hand packer, assembler, and sorter, and proceeded to give the numbers in which they existed in the regional and national economies. (Tr. 441).

On appeal, this Court must determine whether the administrative decision is supported by substantial evidence.

One of the plaintiff's arguments on appeal is that the ALJ improperly rejected the opinion of his treating neurologist, Dr. Arden Mark Acob, who treated Mr. Davenport beginning September 11, 2001 on referral from his family physician, Dr. Mehdi Poorkay, after complaints of having three seizures since March of that year. (Tr. 174). Although Dr. Poorkay prescribed anti-seizure medications, a normal EEG had been obtained by another source (Tr. 157) and an MRI of the brain obtained by Dr. Poorkay had been normal. (Tr. 160). Mr. Davenport also described back pain

8

radiating down his right leg and a headache. (Tr. 174-5).[1] Dr. Acob's physical examination was normal, and he described his neurological examination as "non-focal." (Tr. 175). He asked the plaintiff to continue taking Dilantin and to increase his dosage of Neurontin and, on the next visit, the plaintiff reported that his seizure frequency was remarkably improved, although he was continuing to have partial seizures. (Tr. 170, 172-3). Dr. Acob obtained an EMG/NCV of the right lower extremity to evaluate the possibility of radiculopathy, but the results were normal. (Tr. 167-8, 266). Dr. Acob also requested copies of prior examinations, including MRIs of the brain (Tr. 173) but it is not clear that these were provided, although he noted that "several" EEGs and an MRI of the brain had been unremarkable in the past (Tr. 266).[2] He continued to increase and alter the plaintiff's anti-seizure medications, but his physical examinations consistently showed no abnormalities apart from hyperactive but symmetrical reflexes. (E.g., Tr. 264, 267, 271). Dr. Acob completed a physical residual functional capacity assessment on November 6, 2003, stating that Mr. Davenport could lift no more than five to ten pounds and could

---

[1] Dr. Poorkay had obtained an MRI of the lumbosacral spine showing some compression at L3 but no focal herniation, no stenosis, and minimal kyphosis. (Tr. 158-9). Dr. Poorkay's office notes are difficult to read, but appear to indicate that the plaintiff, although walking slowly, could flex his back, had no spasm, "questionable" scoliosis, and negative straight leg raising. (Tr. 202). Almost the only positive finding was a reduced left knee jerk. (Tr. 202). Dr. Poorkay did not list any functional restrictions.

[2] An MRI of the brain which showed only a septal deviation and no findings to account for the patient's symptoms had been obtained in July, 2001 (Tr. 160).

perform less than full-time sitting, standing, and walking due to degenerative disc disease, spinal arthritis, scoliosis and "2 bent disk," and he also had restrictions on reaching, handling, pushing, and pulling. (Tr. 291-2). Dr. Acob also assessed restrictions on heights, moving machinery, chemicals, and fumes as a result of the plaintiff's seizure disorder.

The plaintiff objects to the ALJ's comment that "it appears the form was completed by an individual other than the physician and/or his staff as the descriptive language regarding diagnosis and clinical evidence is not that typically found in medical reports." (Tr. 20).[3] However, the ALJ rejected Dr. Acob's restrictions primarily on the grounds that they were not supported by any objective findings or by other evidence. (Tr. 21). The opinion of even a treating source is not binding if it is not supported by adequate signs, symptoms, and laboratory findings. Hardaway, 823 F.2d at 927. The only objective test apparently done by Dr. Acob for radiculopathy was negative, his physical examinations were normal, and it is not clear that he reviewed any prior evidence.

The ALJ also noted that, at the time of the plaintiff's initial seizure activity, a drug screen was positive for marijuana (Tr. 157), and a subsequent drug screen was positive for marijuana and several other medications (Tr. 164-5). The plaintiff

---

[3]Indeed, the term "bent disk" does appear in a document apparently prepared by the plaintiff (Tr. 148) and Mr. Davenport also used this term in describing his back problems to a consultative psychological examiner (Tr. 207).

10

admitted at a recent psychological evaluation that he had been arrested for DUI as recently as April, 2004 and the psychologist described him as being evasive about alcohol and drug use patterns. (Tr. 347). In addition, he told the psychologist that from 1997 to 2003, he would drink up to 24 beers once or twice a week. (Id.). At the first of two administrative hearings, Mr. Davenport admitted that he had been drinking in November, 2002 (Tr. 417), and at the September, 2004 hearing he stated that he had been drinking six or seven beers once a month. (Tr. 438-9).

The ALJ's functional capacity conclusions are supported by interrogatories submitted to a medical expert (ME), Dr. Jack Scariano, a neurologist. Dr. Scariano opined that Mr. Davenport's seizures were not typical, that he had a normal EEG with no sign of epilepsy, and that he could perform work which did not involve lifting more than 50 to 100 pounds frequently or 11 to 20 pounds continuously, frequent lifting above shoulder level, or work around unprotected heights and moving machinery. (Tr. 323). He was also restricted from driving, and had moderate restrictions on marked changes in temperature and humidity and exposure to dust, fumes, and gases. (Id.). The physical restrictions not related to the plaintiff's seizure disorder are supported by the report of a non-examining state agency physician. (Tr. 215-18).[4] Given all of these factors, along with the lack of objective test results and

---

[4] Although the plaintiff was treated in the summer of 2004 for a dislocation of the right shoulder and greater tuberosity fracture, the only note from a physician describing a problem indicates that, while a possible associated nerve injury could result in

11

negative findings on examination, a reasonable fact finder could have declined to accept Dr. Acob's opinion.[5]

The plaintiff also objects to the ALJ's choice of psychological limitations. However, although Dr. Poorkay diagnosed anxiety (Tr. 186) and the plaintiff's medications included Xanax and Lexapro (Tr. 150), no treating source listed any functional restrictions. A consultative psychological examiner, Dr. Pamela Starkey, examined Mr. Davenport in November, 2002 and suggested that he would not be able to sustain the attention and pace to complete tasks common to work settings and his response to the stressors of the day-to-day work environment was likely to be marked by depressive symptoms. (Tr. 212). However, she opined that his current use of the medications Lorcet and Soma might be negatively impacting the above symptoms, and a psychological ME, Dr. Suzann O'Koon, suggested that the plaintiff might be overmedicated and that a new examination should be obtained.

---

"significant disability" if it continued, the chances were "good" the problem would improve with time. (Tr. 380). No permanent functional restrictions are given.

[5]The plaintiff objects that the hypothetical question did not include limitations on working in cold environments and around sharp objects, two factors listed in the ALJ's decision. (Tr. 23). However, he offered no evidence that the jobs listed by the VE would involve such work, and the <u>Dictionary of Occupational Titles</u> (DOT) suggests that there are some occupations fitting the job categories given by the VE which do not involve these factors. DOT Sections 559.698-074, 700.684-014.

12

(Tr. 326-7).[6] On June 1, 2004, Mr. Davenport was examined by Dr. Kenneth Starkey, who reviewed Dr. Pamela Starkey's report, and additional reports from Dr. Acob. (Tr. 345). The plaintiff described alcohol use through 2003 and an arrest approximately two months earlier for DUI. (Tr. 347). Dr. Kenneth Starkey diagnosed various conditions including alcohol abuse in partial remission and "rule out" polysubstance dependence, and suggested that, while the plaintiff had only a "marginal" ability to relate to others and tolerate stress and pressures, he might improve if his substance abuse was addressed. (Tr. 351-4).[7] Since it appears that these restrictions were to some degree connected with substance abuse, no longer a basis for disability under Public Law 104-121, any mental restrictions in the hypothetical question were gratuitous.

The plaintiff also submitted additional evidence to the Appeals Council, which he describes as both "new" and "material" as described in Cline v. Commissioner of Social Security, 93 F.3d 146, 148-9 (6th Cir. 1996), and requests a remand for

---

[6] For the reasons stated in the Commissioner's brief, Docket Entry No. 13 at unnumbered pages 14-15, the plaintiff's arguments about medication side effects are without merit.

[7] Although, as the plaintiff points out, the medical assessment form prepared by Dr. Kenneth Starkey was supposed to be completed "without consideration of drug abuse and alcoholism," the psychologist's handwritten comments make it clear that he had overlooked this clause. He wrote, on the same page: "Prevailing limitation[s] might be reduced were Mr. Davenport to achieve and sustain abstinence from alcohol (and [illegible] medications/substances)."

13

Davenport

consideration. The first piece of evidence is a functional capacity questionnaire completed by Dr. Acob on October 5, 2004 (Tr. 395-8), which is prior to the date the ALJ issued his decision on October 25, 2004 (Tr. 28). No good cause has been cited for failing to submit this evidence to the ALJ. It also contains only diagnoses and restrictions with no additional objective evidence, and, thus, would not provide a basis for changing the administrative decision. The other new evidence consists of an additional office note from Dr. Acob dated April 2, 2004, also well before the date of the administrative decision. Once again, Dr. Acob makes no objective findings on examination apart from hyperactive reflexes. (Tr. 400-3). The new evidence does not provide a basis for remand.

The decision will be affirmed.

This the  24  day of May, 2006.

*(signature)*
G. WIX UNTHANK
SENIOR JUDGE

14